FILED & ENTERED

NOV 25 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Williams  DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Saul Antonio Flores<br><br><br><br>Debtor(s). | Case No.: 1:08-bk-19869-MT<br>CHAPTER 7<br>**MEMORANDUM OF DECISION RE MOTION FOR RECONSIDERATION**<br><br>Date:      June 12, 2013<br>Time:     10:00 a.m.<br>Courtroom:   302 |

**Introduction**

On December 5, 2008, Saul Antonio Flores ("Debtor") filed for relief under

chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). Debtor

received a discharge on March 24, 2009. The deadline for filing proofs of claim was

April 25, 2011.

Early in the case, on March 18, 2009, creditor Tammy Kimball ("Kimball") filed a

Motion for Relief from the Automatic Stay to proceed in a non-bankruptcy forum. The

-1-

motion was filed on a mandatory form.  Under grounds for relief from stay, Kimball checked the box that reads: "The claim is insured.  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor(s) or estate property."  Dairyland Insurance Company ("Dairyland") was listed as the insurance carrier.  The non-bankruptcy action was filed pre-petition on March 2, 2007 and involved injuries sustained by Kimball in an automobile accident with Debtor (the "Insurance Action").  The relief from stay motion was not opposed.  On April 23, 2009, the Court entered an order granting relief from stay to Kimball to proceed with the Insurance Action in Florida.  The order granting relief from stay was limited to "collecting upon any available insurance in accordance with non-bankruptcy law."

Following Debtor's discharge and the closing of the case, on July 16, 2010, the chapter 7 Trustee David Gottlieb (the "Trustee") filed a Motion to Reopen for the purpose of administering a potential asset for the benefit of the estate.  The Trustee wanted to proceed against Dairyland for allegedly acting in bad faith by failing to timely settle Kimball's personal injury and property damage claims under Florida law.  The result in the Insurance Action was a judgment far in excess of Debtor's policy limits.  Under Florida law, the Trustee has standing to maintain a bad faith action against an insurance carrier for the amount of any excess judgment resulting from the carrier's bad faith handling of a claim.  The Motion to Reopen was granted on August 17, 2010.

On January 10, 2011, Kimball timely filed a proof of claim in the amount of $2,659,357.47.  Kimball's proof of claim is based on a personal injury verdict and final judgment from the Insurance Action.  No objection was filed against Kimball's claim.

On August 18, 2011, Kimball filed a second Motion for Relief from the Automatic Stay to proceed in a non-bankruptcy forum. This relief from stay motion sought relief to proceed in Florida with a bad faith claim against Dairyland (the "Bad Faith Action"). The plaintiffs to the action are the Trustee and Kimball. Dairyland opposed that motion and was represented by the Troutman Sanders LLP law firm. After a hearing, the Court entered an order granting relief from stay stating that "[n]othing in this Order modifies the *Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Action in Non-Bankruptcy Forum) (Movant Tammy S. Kimball)* previously entered by this Court on April 23, 2009.

On December 7, 2012, Kimball and the Trustee filed a stipulation entitled "Stipulation Resolving Claim of Tammy S. Reier f/k/a Tammy S. Kimball" (the "Stipulation"). In the recitals, Kimball and the Trustee state that the Court's April 23 order granting relief from stay to proceed with the Insurance Action placed no restrictions on Kimball from filing a proof of claim. They also state that Kimball has "repeatedly represented that she had no intention of waiving any claim she might have against the Estate." Kimball and the Trustee also state that Debtor's schedules list a possible claim for bad faith against Dairyland as an asset. In light of those recitals, and others, Kimball and the Trustee stipulated that Kimball "has a valid, unsecured, non-priority claim against the Estate of Saul Antonio Flores for $2,659,357.47." Kimball and the Trustee also stipulated that the Bad Faith Action and any recovery therefrom is property of the bankruptcy estate. The proof of service to the Stipulation lists Dan E. Chambers and Meghan C. Sherrill as parties receiving "NEF" service on behalf of Dairyland. They are with the Troutman Sanders law firm in the Irvine, California office

and filed the request for notice in the case (see Docket entry #31), and were the attorneys who filed previous pleadings in this case. The Florida insurance litigation is being handled by an attorney in the firm's Washington D.C. office. The Stipulation was approved in an order entered on December 13, 2012.

On April 22, 2013, Dairyland filed a Motion for Reconsideration asking that the order entered on December 13 approving the Stipulation be amended so that the second paragraph is vacated. The second paragraph states that Kimball has a valid unsecured non-priority claim against the bankruptcy estate. The Motion for Reconsideration was signed by attorney Meghan Sherrill. Dairyland maintains that Kimball does not have a valid claim because she previously unambiguously and intentionally waived "that claim." Dairyland maintains that it has an interest in the subject matter addressed in the Stipulation, but that it was neither advised of the Stipulation before it was filed nor asked to join in the Stipulation. An opposition and reply were filed. Also, requests for judicial notice were filed by both Dairyland and the Trustee. Kimball objected to Dairyland's request.

**The Bad Faith Action**

The Bad Faith Action was filed in Florida state court on or about March 10, 2011. There, the Trustee and Kimball allege that Dairyland acted in bad faith in its handling of Kimball's claim. On March 19, 2011, Dairyland filed a motion to dismiss. Dairyland maintains that under Florida law, an insurer cannot be held liable for bad faith if the judgment obtained by the claimant (Kimball) is unenforceable against the insured, and, in the context of a bankruptcy, the insured's bankruptcy estate. Because Kimball

allegedly waived any claim against Debtor and the bankruptcy estate through the first relief from stay motion, Dairyland maintains that it cannot be held liable for any alleged bad faith handling. The Florida court denied the motion to dismiss. Dairyland maintains that the Florida court acknowledged that without an enforceable judgment, there can be no bad faith claim against Dairyland. The Florida court, however, denied the motion to dismiss allegedly because the motion to dismiss relied on materials beyond the pleadings and were not properly resolved on a motion to dismiss.

Following the Court's ruling on the second relief from stay motion, Dairyland filed a motion for summary judgment in Florida. At the hearing on the motion for summary judgment, Dairyland offered to provide the Florida court with a copy of the transcript of the hearing on the second relief from stay motion. Kimball and the Trustee objected because the transcript had not been previously filed. The Florida court denied the motion without prejudice so that Dairyland could file a second motion for summary judgment with a copy of the transcript. That motion for summary judgment was filed on November 19, 2012 and is pending before the Florida court. Shortly thereafter, on December 7, the Stipulation was filed.

**Dairyland's Standing**

The Trustee and Kimball oppose the Motion for Reconsideration on the basis that Dairyland lacks standing to object to the allowance of Kimball's claim. Dairyland's standing is closely intertwined with the parties' efforts to have this court decide issues which are currently and properly before the Florida court.

Although the term "party in interest" appears many times in the Bankruptcy Code, it is not defined in 11 U.S.C.S. § 101. It has been described as an expandable concept depending on the particular factual context in which it is applied. In various contexts, a "party in interest" has been held to be one who has an actual pecuniary interest in the case, anyone who has a practical stake in the outcome of a case, and those who will be impacted in any significant way in the case. Brown v. Sobczak (In re Sobczak), 369 B.R. 512, 517-18 (9th Cir. BAP 2007). Under § 502, the trustee is the "optimal party in interest to raise objections on behalf of the estate." In re Dominelli, 820 F.2d 313, 317 (9th Cir. 1987). Under § 502, however, "there is no doubt that the phrase parties in interest . . . includes those who have some interest in the assets of the debtor being administered in the case." 4 Collier on Bankruptcy ¶ 502.02[2][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed). The Bad Faith Action and any proceeds therefrom are the only potential asset of this estate.

In In re Standard Insulations, Inc., 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992), the court reasoned that "Debtor's insurance is the only asset of consequence. The insurers are responsible or payment of injury claims caused by exposure to debtor's products during covered periods. The insurers are parties in interest under 11 U.S.C. §§ 1109(b) and 502(a), and have standing to object to claims against the estate." Standard Insulations, 138 B.R. at 950. Although not analyzed through the lens of §502, the Ninth Circuit cited Standard Insulations favorably in Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869 (9th Cir. 2012) (*cert.* denied). There, the Ninth Circuit found that whether insurers had standing as parties in interest turned on whether the proposed plan was "insurance neutral." Id at 884-5. After

considering the facts of that case, the Ninth Circuit held that "the plan is therefore not insurance neutral, which provides the non-settling insurers with party in interest standing under § 1109(b)." Id at 887.

This reasoning has a certain appeal here as well. Here, too, Debtor's only asset of consequence is the Bad Faith Action. If the Trustee is successful, Dairyland would be liable to Debtor's estate. The amount of that liability is presently unknown, but it is to be used to pay claims in the bankruptcy case. Thus, Dairyland would seem to have a pecuniary interest in the allowance of Kimball's claim, because allowance of her claim may affect the viability of the Bad Faith Action against Dairyland.

Because this is not a claim for insurance proceeds but a bad faith claim, however, the analysis differs from the usual insurance coverage situation. Resolution of the allowance of Kimball's claim in the bankruptcy case is actually "insurance neutral." The Trustee has obviously decided not to object to Kimball's claim, but the Trustee's decision to acknowledge Kimball's claim as valid is not necessarily binding on Dairyland in an action outside the bankruptcy case. Whatever arguments Dairyland has against the legitimacy of Kimball's Bad Faith Action in the Florida action may still be made in the Bad Faith Action. The Trustee's position in the Bad Faith Action is entirely consistent with his position in the bankruptcy case. This Court is not hearing the Bad Faith Action. It merely lifted the stay to permit actions to proceed in Florida. For the same reasons reconsideration is not proper here, Dairyland may only reference actions that occurred in the bankruptcy court, but it has no standing to object to claims or orders affecting those claims here.

**Cause and the Basis for Relief Under Rule 60(b)**

As standing is closely intertwined with the reconsideration issue, the other issues raised by the parties will also be addressed. When a motion for reconsideration is filed after the appeal period has expired, the motion for reconsideration is treated as a Federal Rule of Civil Procedure 60(b) motion. United States Funds, Inc. v. Wylie (In re Wylie), 349 B.R. 204, 209 (B.A.P. 9th Cir. 2006). Under Rule 60, the moving party is not permitted to revisit the merits of the underlying order; instead, grounds for reconsideration require a showing that events subsequent to the entry of the judgment make its enforcement unfair or inappropriate, or that the party was deprived of a fair opportunity to appear and be heard. Wylie, 349 B.R. at 209. Under Rule 60, the court may relieve a party from an order for:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; and

(6) any other reason that justifies relief.

Fed. R. Bankr. P. 60(b)

Dairyland maintains that cause exists under Rule 60(b) because of its mistake or excusable neglect. Dairyland argues that although its local counsel was served with electronic notice of the stipulation, local counsel did not follow up with Dairyland or its Bad Faith Action counsel. Dairyland maintains that its local counsel was justified in not looking into the Stipulation, because "they did not recognize the potential significance of those documents" on the Bad Faith Action nor did local counsel have reason to believe that an order approving that stipulation would be lodged and entered. Although Dairyland claims its local counsel was justified in not looking into the Stipulation, Dairyland maintains that failure to follow up by local counsel is precisely the type of excusable neglect contemplated by Rule 60(b).

Excusable neglect is evaluated by considering: 1) the danger of prejudice to the debtor; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay; and 4) whether the movant acted in good faith." ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996 (9th Cir. 2006). This list is not exhaustive. Id. In considering such issues, the Court concludes that the Trustee is prejudiced by having a five month delay in having a critical issue settled in the bankruptcy case. If Kimball and the Trustee do not have a valid agreement that any judgment in the Bad Faith Action would belong to the bankruptcy estate, the Trustee faces the risk of having expended considerable attorney fees in Florida, only to have a dispute over whether they belong to the estate or not.

Whether Movant acted in good faith by not acting upon the Stipulation when filed is hard to say. All parties appear to be seeking to leverage the bankruptcy court

proceedings to full advantage in the Bad Faith Action. The failure to recognize the significance of the stipulation is not excusable where this matter was being actively litigated. East Coast and West Coast counsel in the same firm should have been in communication. Although bankruptcy counsel perhaps did not realize the full implications of the Stipulation on the Bad Faith Action, this does not negate the duty to zealously advocate as counsel. There should have been some follow-up.

While the merits of the substantive position in a reconsideration motion are not normally considered, the motion would have to be considered despite the delay if that were truly necessary to prevent a miscarriage of justice. Reconsideration is actually not necessary to leave the parties in the same position they were in had the stipulation and order not been entered. All parties appear to be using the relief from stay hearings and stipulation as a substitute for the full adjudication on the merits required in the Florida court. They misperceive the purpose and effect of both relief from stay and a trustee-creditor stipulation on a claim.

A hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires "the bankruptcy court's action to be quick." Grella, 42 F.3d at 31 (citing Matter of Vitreous Steel Prods. Co., 911 F.2d 1223, 1232 (7th Cir. 1990)). Section 362(e) provides that the bankruptcy court must hold a preliminary hearing on a motion for relief from stay no later than thirty days after the motion is filed or "such stay is terminated with respect to such party in interest making such request." 11 U.S.C. § 362(e)(1994). Furthermore, § 362(e) requires that the court conclude a final hearing on the motion for relief from stay no later than thirty days from the conclusion of the

preliminary hearing unless, due to compelling circumstances, the parties consent to an extension for a specified period of time.

Given the limited grounds for obtaining a motion for relief from stay, read in conjunction with the expedited schedule for a hearing on the motion, motion for relief from stay hearings should not involve an adjudication of the merits of claims, defenses, or counterclaims, but simply determine whether the creditor has a colorable claim to the property of the estate or whether an action should proceed in a non-bankruptcy forum. See In re Johnson, 756 F.2d 738, 740 (9th Cir.), cert. denied, 474 U.S. 828, 88 L. Ed. 2d 72, 106 S. Ct. 88 (1985)("Hearings on relief from the automatic stay are thus handled in a summary fashion. The validity of the claim or contract underlying the claim is not litigated during the hearing.")(citation omitted); In re Ellis, 60 B.R. 432, 436 (9th Cir. BAP 1985)("In any case, stay litigation is not the proper vehicle for determination of the nature and extent of those rights."); Grella, 42 F.3d at 33 ("We find that a hearing on a motion for relief from stay is merely a summary proceeding of limited effect, and . . . a court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate."); see also, 3 Collier on Bankruptcy P 362.08[6], 362-106 (15th ed. rev. 1997) [hereinafter Collier].

The Court has previously refused to interpret its first relief from stay order or to rule in any way on the Bad Faith Action when presented with an opportunity to do so in the second relief from stay proceeding. The sole purpose of the relief from stay orders were to make it clear to the Florida court that the two actions could proceed without violating the stay.  No motion for reconsideration of the relief from stay orders has ever been brought, so the two actions outside this Court proceeded while the estate awaits resolution of those issues to see how it affects administration of the bankruptcy estate.

**Kimball's Waiver Issue**

Dairyland maintains that Kimball waived her right to any claim against Debtor or the estate when it first sought relief from stay. Kimball and the Trustee state that Kimball could not have waived her right to pursue a bad faith action against Dairyland, because it is separate and apart from the Insurance Action. Also, Kimball and the Trustee argue that the Bad Faith Action did not arise until after Kimball filed the first relief from stay motion; implied in that argument is that Kimball did not know of the Bad Faith Action and could not knowingly have rescinded her right to pursue a bad faith claim against Dairyland.

The parameters of the waiver issue have not been thoroughly briefed. While the law that would apply here is clear enough – "waiver is the intentional or voluntary relinquishment of a known right," U.S. v. Fort, 472 F.3d 1106, 1120 (9th Cir. 2007) – it is not clear how this issue applies in the context of Florida bad faith law. In addition, even if Kimball were found to have effectively waived her right to a deficiency, neither party has discussed whether the Trustee, as the representative of Debtor's estate, has the authority to release Kimball from her waiver or is even bound by such waiver. None of these issues can be reached at this time and must be evaluated in the context of Florida law in this area. It is unlikely this Court would have the authority to even resolve this issue of state tort law between a creditor of the estate and a non-party to the bankruptcy case. See Stern v. Marshall, 131 S. Ct. 2594 (2011). 28 U.S.C §157(b)(5).

//

**Stipulation**

Unsurprisingly, the parties take differing views of the effect of the Trustee's stipulation on the Bad Faith Action.  Regardless of how that action comes out, the Trustee had an independent duty to resolve any issues related to the ongoing administration of the bankruptcy estate here.  The stipulation does resolve the issues between the Trustee and Kimball as to whether the Bad Faith Action would be considered property of the estate and whether the Trustee would object to Kimball's claim in the bankruptcy case.  Under § 502, the trustee is the "optimal party in interest to raise objections on behalf of the estate."  In re Dominelli, 820 F.2d 313, 317 (9th Cir. 1987).   As the Trustee has decided not to object to the claim, it is deemed allowed whether or not a stipulation to that effect is filed. 11 U.S.C. § 502(a).  Whether there will be funds coming into the estate to pay claims is a totally separate matter. The allowance of claims against the bankruptcy estate runs an independent course from the liquidation of claimed assets by the estate.

Arguably, the Trustee should have sought the order resolving any dispute over Kimball's claim through Bankruptcy Rule of Procedure 9019 (a).   It is, however, not entirely clear that a 9019 motion is required in this context. There is little case law in the Ninth Circuit on the subject, but Rule 9019 approval can be read as permissive rather than mandatory where the parties are not seeking to bind anyone other than the parties to the stipulation. In re Hall, 2010 Lexis 1487 (Bankr. D. Kansas 2010).  Where settlements are simply stipulations between two parties, without an opportunity for all to be heard, notice need not be given to all under Rule 9019, as they do not seek to bind

others. 8 Norton Bankruptcy Law & Practice 167:1 (Thompson/West 2009); In re OptinRealBig.com, LLC, 345 B.R. 277, 291 (Bankr. D. Colo. 2006). Rule 9019 cannot create substantive requirements where the Code imposes none, and at the same time, it cannot violate due process by imposing results on parties who were not party to the agreement. Northview Motors, Inc. Chrysler Motors Corp., 186 F.3d 346 (3d Cir. 1999).

Where, however, the Trustee is seeking to bind others, Rule 9019 requires a notice and hearing, followed by approval of the court. "The purpose and effect of seeking court approval of a compromise under Rule 9019 is to bind the bankruptcy estate to the terms of any bargain struck by a trustee or debtor-in-possession that affects the bankruptcy estate." OptinRealBig.com, LLC, 345 B.R. at 291; In re Blehm Land & Cattle, 859 F. 2d 137 (10th Cir. 1988). The Trustee cannot expect to bind other parties where a full notice and opportunity for hearing was not given to the other parties. In re Masters, Inc., 149 B.R. 289 (E.D.N.Y. 1992); In re McKay, 443 B.R. 511 (Bankr. E.D. Ark. 2010).

Here, while the Trustee served notice of the stipulation on Dairyland, there was no notice of motion and no hearing. The order was submitted as a matter resolving a dispute between two parties and not a resolution binding to all. Thus, to the extent that Dairyland would have had any standing to object to the Trustee-Kimball Stipulation and Order, the Trustee has proceeded in a manner that both avoided giving Dairyland any hearing on the order and any ability of the estate to bind Dairyland to the terms of the order. The court never considered Dairyland's position, and may well have decided that the bankruptcy court did not have the authority to decide the issue as to non-parties.

Thus, all that the stipulation and order resolved were solely the issues between the Trustee and Kimball.  Reconsideration would require the court to consider an issue that was never properly before it.  Thus, the order stands, and the Bad Faith Action proceeds independently to determine whether the estate may recover anything.

**Evidence Objections**

The evidence objections are overruled.  The Court has taken judicial notice of any pleading filed in this or the Florida court with the requests for judicial notice, but the weight or import of the pleading was still independently evaluated.   Kimball's objection to the declarations submitted in support of the reply are overruled as they only attempt to address that which was raised by Kimball and the Trustee in their respective oppositions.  The Trustee and Kimball opened the door to these arguments and to the presentation of such evidence.  There was no prejudice because the Trustee and Kimball had an opportunity to comment and present rebuttal argument at the hearing.

The motion to reconsider is accordingly DENIED.

Date: November 25, 2013

Maureen A. Tighe
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled **MEMORANDUM OF DECISION RE MOTION FOR RECONSIDERATION** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** B Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of 11/25/13, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Dan E Chambers     dchambers@clfca.com
Peter A Davidson     pdavidson@ecjlaw.com, lpekrul@ecjlaw.com
David Keith Gottlieb (TR)     dkgtrustee@crowehorwath.com, dgottlieb@ecf.epiqsystems.com,renee.johnson@crowehorwath.com
Meghan C Sherrill     meghan.sherrill@troutmansanders.com
Marcus Tompkins     mtompkins@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com
United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov
Jeffrey N Wishman     jeffreywishman@aol.com, bwlecf@gmail.com

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Howard M Ehrenberg, on behalf of Trustee David Gottlieb
Sulmeyer Kupetz
333 S Hope St Thirty-Fifth Flr
Los Angeles, CA 90071

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page